IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JEWELL A. SCRIVNER,            )
                               )
         Plaintiff,            )
                               )
v.                             )     Case No. CIV-16-264-KEW
                               )
NANCY A. BERRYHILL, Acting     )
Commissioner of Social         )
Security Administration,       )
                               )
         Defendant.            )

## OPINION AND ORDER

Plaintiff Jewell A. Scrivner (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 51 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has worked in the past as a waitress, home health aide, cook, cashier, and certified nurse assistant. Claimant alleges an inability to work beginning February 1, 2011 due to limitations resulting from migraine headaches, back problems, dizziness,

tingling in the legs, mental problems, chest pain, and high blood pressure.

## Procedural History

On May 14, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income benefits under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After an administrative hearing, an Administrative Law Judge ("ALJ") denied benefits. The denial was appealed to the United States District Court for the Northern District of Oklahoma, which reversed the ALJ's decision and remanded the case for further proceedings.

While the appeal was pending, Claimant filed additional applications for Title II and XVI benefits on November 18, 2012 and January 15, 2013, respectively. On remand, the ALJ consolidated the earlier applications filed in 2008 with the later applications for consideration. On July 1, 2014, ALJ Deborah Rose conducted an additional administrative hearing on Claimant's applications. By decision dated August 29, 2014, the ALJ denied Claimant's requests for benefits. The Appeals Council denied review on April 15, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§

404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly weigh, discuss, evaluate, and consider all of the medical evidence; (2) failing to perform a proper analysis at steps four and five; and (3) failing to properly apply the Medical-Vocational Guidelines.

## Consideration of the Medical Evidence

In her decision, the ALJ found Claimant suffered from the severe impairments of degenerative joint disease of the knees, bipolar disorder, and a history of polysubstance abuse. (Tr. 818). The ALJ found Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight hour workday, and sit for six hours in an eight hour workday. Claimant was found to have only occasional public interaction and could have superficial and incidental interaction

5

with co-workers and supervisors for work purposes. Claimant was found by the ALJ to be able to adapt to most routine workplace changes and was able to perform simple, routine tasks. (Tr. 820).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of production inspector, press machine operator, and bench assembler, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 828). As a result, the ALJ concluded Claimant was not disabled from February 1, 2011, the amended alleged onset date, through the date of the decision. Id.

Claimant asserts the ALJ failed to properly consider the opinion of Dr. Edgar J. Kranau, who performed a psychological evaluation of Claimant on June 16, 2014. His evaluation included conducting a clinical interview of Claimant, performing a mental status examination, administering the Millon Behavioral Medicine Diagnostic, Center for Epidemiologic Studies Depression Scale, and reviewing the records. (Tr. 1430). Dr. Kranau concluded Claimant was suffering from "significant levels of depression." Her attention and concentration were adequate and her memory was within normal limits for her age group. Claimant's cognitive functioning appeared to be in normal limits for her age group as well. Her psychiatric symptoms were well controlled with medication.

6

Claimant's coping skills were somewhat limited but she had crafted a lifestyle which minimized stress in her life. (Tr. 1431).

Dr. Kranau noted Claimant had been suffering from a psychiatric disorder for many years, with the record suggesting that she had considered suicide many times and attempted it on many occasions which required hospitalization. She had suffered manic-type behavior. She had been under psychiatric care for many years and had been diagnosed with bipolar disorder. Id.

Dr. Kranau then concluded that Claimant "is unable to maintain employment" and had been "unable to work on a consistent basis since prior to June 30, 2011." He diagnosed Claimant with bipolar I disorder. Id.

The ALJ found that Dr. Kranau's opinion was "prepared simply to enhance the claimant's eligibility for benefits." She went further, however, and stated

> The objective findings only show normal mental functioning, other than somewhat limited coping skills and a history of significant levels of depression and suicide attempts. However, there is nothing severe enough to support his opinion that she has been unable to maintain employment since June 30, 2011, due to a mental impairment. He reported severe and marked limitations in many areas. I give this no weight. It is contradicted by the findings of Snider, the treating records from Family and Children's Services, and the record as a whole.

(Tr. 826).

This Court agrees with Claimant that rejecting a medical opinion on the basis that it was intended to "enhance" Claimant's application for benefits smacks of the old "physician's report appears to have been prepared as an accommodation to the patient" statement that has been roundly rejected as a basis for reducing the weight afforded a physician's opinion. Miller v. Chater, 99 F.3d. 972, 976 (10th Cir. 1996) citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). This reasoning, however, was not the sole basis for rejecting Dr. Kranau's opinion.

The primary basis for the ALJ's reduction of Dr. Kranau's opinion was the conflict with his own notes from his examination and testing of Claimant. As stated, Dr. Kranau's findings on attention and concentration, memory, and cognitive functioning were essentially normal and Claimant's psychiatric symptoms were "well controlled by her current medication regimen." (Tr. 1431). Dr. Kranau then proceeded to find Claimant moderately, markedly, or severely limited in all functional areas in his mental RFC assessment. (Tr. 1434-35). The inconsistency in these findings could not be more pronounced.

The ALJ also found Dr. Kranau's findings were contradicted by the opinion of Dr. Brian R. Snider, who also performed a mental status examination on Claimant. While Dr. Snider found Claimant's

8

affect to be "slightly restricted and her mood appeared to be somewhat depressed", she demonstrated adequate memory and concentration, average intelligence, and mild difficulty with memory and concentration. (Tr. 1264). He concluded

> [Claimant] would probably have little difficulty understanding and carrying out simple instructions and would likely have mild to moderate difficulty with complex and detailed instructions. She is likely to have moderate difficulty concentrating and persisting through a normal work day due to psychiatric symptoms. Her ability to maintain a normal workday and work week without interruptions from her psychiatric symptoms is likely moderately impaired. In all likelihood, she would have mild to moderate difficulty responding appropriately to coworkers and supervisors. [Claimant] appears capable of managing her own funds.

(Tr. 1265).

The ALJ is entitled to evaluate the inconsistency of a medical opinion with the record and discount the weight given to the opinion. *See* Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009). Contrary to Claimant's argument that Defendant provides a *post hoc* explanation for the ALJ's rejection of Dr. Kranau, the ALJ stated the basis for rejection and this Court finds he was within his function to assess the validity of the opinion in light of the record.

Claimant also suggests that the ALJ erred in not addressing Dr. Snider's diagnosis of major depressive disorder and panic

9

disorder with agoraphobia. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. <u>Coleman v. Chater</u>, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), <u>Madrid v. Astrue</u>, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); <u>Scull v. Apfel</u>, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact Dr. Snider diagnosed these conditions does not give rise to any further functional limitation than those set out by the ALJ in the RFC.

Claimant next points out that the ALJ gave some weight to the opinions of Dr. Jack Bankhead and Dr. Evette Budrich, consultative reviewers but excluded some of the functional limitations that they found. These physicians identified several postural and environmental limitations which were not included in the RFC or generally addressed by the ALJ in the decision. (Tr. 820, 954-56, 985-87). While Defendant argues that these omissions were harmless

10

because the identified jobs do not implicate these restrictions, the ALJ was required to address their effect upon Claimant's functional performance. When evaluating the evidence, the ALJ cannot pick and choose the evidence upon which he relies simply because it supports his finding of non-disability. <u>Hardman v. Barnhart</u>, 362 F.3d 676, 681 (10th Cir. 2004). Without allowing the vocational expert to consider these additional limitations, it becomes problematic for the ALJ to have relied upon his testimony at step five in identifying representative jobs which met Claimant's functional limitations. On remand, the ALJ shall address the additional limitations set out by the consultative reviewers upon which the ALJ relied.

**Application of the Grids**

Claimant contends the ALJ erred in concluded she did not "grid out" under the Medical-Vocational Guidelines (the "grids"). In doing so, Claimant argues that she should have been limited in the RFC to sedentary work with no transferrable skills. Given that the ALJ must reassess the RFC after considering the additional postural and environmental limitations found by the consultants, the ALJ shall consider the application of the grids should the appropriate modifications to the RFC warrant.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED to Defendant for further proceedings**.

IT IS SO ORDERED this 28th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE